UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARITA GRAY,

        Plaintiff,

        v.

COMMISSIONER
of Social Security,

        Defendant.

Civil No. 07-751-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

        Plaintiff Marita Gray brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the Act). Plaintiff requested judicial review of a final decision by the Commissioner of the Social Security Administration (SSA) that denied her application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The following factual summary of the record presented assists with this review.

BACKGROUND

        Plaintiff was born in 1958 and was forty-four years old when she alleges she became disabled. Plaintiff claimed at one point to have graduated from high school, but her school records indicate that she dropped out in the eleventh grade. Plaintiff claimed that she has completed training to qualify as a certified nursing assistant. Her past work experience includes employment as a hotel maid.

1  - OPINION AND ORDER

The record also indicates that plaintiff has abused drugs, participated unsuccessfully in drug treatment programs, and has engaged in drug-seeking behavior in multiple emergency room visits. Plaintiff has a criminal history.

Plaintiff's applications for disability benefits were filed with a protective date of May 16, 2002. She claimed disability from March 15, 2001, resulting from hepatitis B and C, asthma, and depression. She asserted in her applications that she completed twelve years of education and did not attend special education classes.

Plaintiff's applications were denied initially and after administrative reconsideration. She then appeared before an Administrative Law Judge (ALJ) on August 18, 2004 for a hearing. At this hearing, medical expert John Crossen, Ph. D., opined that plaintiff's applications could be better assessed after plaintiff underwent psychological testing and after her high school records were examined.

A second hearing was held before an ALJ on December 20, 2005. Testimony was provided by plaintiff, Dr. Crossen, and Vocational Expert (VE) C. Kay Wise. On January 27, 2006, the ALJ issued a decision that concluded that plaintiff was not qualified for disability benefits because she could make a vocational adjustment enabling her to accept work available in significant numbers in the national economy.

Plaintiff's request for further administrative review was denied by the SSA's Appeals Council. This rendered the ALJ's ruling as the Commissioner's final decision for purposes of obtaining judicial review. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citations omitted).

STANDARDS

A person may be eligible for DIB and SSI if he or she has insured status under the Act and suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). Persons who are sixty-five years old or older, blind, or disabled, may be eligible for SSI regardless of their insured status under the Act. *See* 42 U.S.C. § 1382(a).

A claimant is considered disabled for purposes of receiving DIB or SSI benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A person can be disabled for these purposes only if his or her impairment is of such severity that the person is not only unable to perform previous work but also, considering the person's age, education, and work experience, cannot engage in any other kind of substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB or SSI payments. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).

At step one, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, disability benefits are denied. If not, the Commissioner proceeds to step two.

At step two the Commissioner determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. §§ 404.1520(a), 416.920(a). If the claimant does not, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to any of a number of impairments that the Commissioner acknowledges to be so severe that they are presumed to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work that the claimant has performed in the past. If the claimant is able to perform his or her

former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work which he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The claimant is entitled to disability benefits if he or she is not able to perform any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the initial burden of establishing his or her disability. In the five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. At step five, however, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her functional capacities and age, education and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (DIB); *Andrews v. Shalala,* 53 F.3d 1035, 1040 (9th Cir. 1995) (SSI). If the Commissioner cannot meet this burden, the claimant is considered disabled for the purposes of awarding benefits under the Act. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

The Commissioner has an affirmative duty to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). In this sense, the proceedings are not adversarial and the Commissioner shares the burden of proof with the claimant at all stages. *Id*.; *Tackett,* 180 F.3d at 1098 n. 3.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1098. Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Id*. Substantial evidence is more than a mere scintilla, but not necessarily a preponderance, of evidence. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational

interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, is responsible for resolving conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

FINDINGS

At step one the ALJ determined that plaintiff did not engage in substantial gainful activity since her alleged onset date.

At step two the ALJ determined that plaintiff suffered severe impairments, including a history of ankle fractures with post-traumatic degenerative joint disease, hepatitis B and C infection, asthma, depression, and polysubstance dependence and cocaine-induced anxiety disorder.

At step three the ALJ concluded that plaintiff's impairments did not meet or medically equal the requirements of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff's residual functional capacity (RFC) was evaluated, which indicated that she could perform simple, routine, repetitive work that required no interaction with the public and no involvement with food preparation or service. Plaintiff could stand or walk in fifteen-minute increments for up to two hours in an eight-hour day. She could carry up to twenty pounds occasionally and ten pounds frequently. She was precluded from work requiring the use of ropes, ladders or scaffolds, and any work involving hazardous environments. Plaintiff was also precluded from work that involved fumes, dusts, odors, or gases.

At step four the ALJ determined that plaintiff could not perform past relevant work.

At step five the ALJ considered testimony from the VE and consulted vocational guidelines to determine that plaintiff could perform other work existing in significant numbers in the national economy, including jobs as a garment sorter, hand bander, and label coder.

QUESTIONS PRESENTED

Plaintiff contends that the ALJ erred in failing to find at step two that she suffered from severe cognitive impairments and, relatedly, in failing to find at step three that plaintiff's severe cognitive impairment met or equaled the SSA listing 12.05.

Plaintiff also contends that the ALJ erred in failing to find at step two that her hip and back pain severely impaired her, and that the ALJ rejected medical opinions improperly.

Plaintiff's other arguments are also summarized and addressed below.

ANALYSIS

    1.    <u>Allegations of cognitive impairments</u>

This court concludes that the ALJ's evaluation of plaintiff's allegations of cognitive impairments was proper. Plaintiff refers to her testing with two examining psychologists and her high school record for support of her contention that her cognitive impairments meet or equal the requirements set forth in Listing 12.05B or Listing 12.05C.

These Listings provide in relevant part as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>    \* \* \*
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05.

Plaintiff was evaluated by Dr. Jane Starbird, a psychologist, on March 27, 2002. A subordinate of Dr. Starbird's conducted the testing of plaintiff and Dr. Starbird provided a subsequent interpretation of that testing. Doctor Starbird concluded that plaintiff's insight "would be deemed moderate to poor based on her self-disclosures, such as they were," but that

"the limits of her disclosures" made professional assessment difficult. Tr. of Admin. R. (hereinafter, Tr.) 282.

Plaintiff's full scale IQ was scored at 57 in the testing administered by Dr. Starbird's staff. Tr. 283. Her scores fell in the "mildly retarded" range, and her achievement scores placed her at kindergarten or lower levels. Tr. 284-86. However, these scores were questioned, and further evaluations were undertaken. As noted above, Dr. Crossen, the agency medical expert, questioned the validity of the test results obtained by Dr. Starbird, and he proposed further psychological testing and also proposed evaluating plaintiff's high school records.

Doctor Elaine Greif, a clinical psychologist, evaluated plaintiff on October 19, 2004. During her consultative examination with Dr. Greif, plaintiff denied attending any special education courses and acknowledged that she dropped out of high school. Tr. 555. She complained of fatigue related to hepatitis B and C infections, and claimed to have avoided illegal drug use for two years. *Id*.

Doctor Greif expressed doubts about plaintiff's candor and noted that "her reports conflicted with records in important ways, such regarding histories of substance abuse, criminal behavior, and education." Tr. 554.

Dr. Greif also noted other unverifiable aspects of plaintiff's presentation:

> [plaintiff] reported extreme psychological distress that I simply cannot assess independently in the current context – such as hallucinations, panic and suicidal ideation. Motivation remained questionable and tests of effort yielded mixed results. On cognitive evaluation she performed at a level of Mild to Moderate [m]ental retardation with memory skills at the Low Average to Average range. While I have no doubt that Ms. Gray's intellect and literacy skills are limited, I do not know to what extent this is so and for what reasons. If Ms. Gray is of limited natural intellect, school records should show this. * * * If Ms. Gray's current cognitive function is lower than at some prior time in her life, one would have to question why this is so. The effects of drug abuse would have to be considered here. Ms. Gray reported being clean and sober currently, but the general problem with her self-reports confuses things. I simply do not know the facts. On a practical level, Ms. Gray's presentation and history give little hope of her establishing and maintaining work.

Tr. 556-57.

Dr. Greif opined that plaintiff would be slightly to moderately limited in her ability to understand, remember, and carry out detailed instructions, and moderately limited in her ability

7  - OPINION AND ORDER

to make judgments on simple work-related decisions. Tr. 563. She believed that plaintiff also would be moderately to slightly limited in the abilities to (1) interact appropriately with the public, supervisors, and coworkers; (2) respond appropriately to changes in a routine work setting; and (3) respond appropriately to work pressures in a usual work setting. Tr. 564. The doctor also opined that – assuming plaintiff's test results were valid – she would be unable to manage her own funds. Tr. 565.

Pursuant to the suggestions of Drs. Crossen and Greif, plaintiff's high school records were examined. Plaintiff acknowledged that she was "excused" from high school without graduating. Pl.'s Brief at 12 (citing Tr. 254-55). Her grades were "mostly C's" in the ninth grade, and declined thereafter until she dropped out. *Id*.

At the second ALJ hearing, Dr. Crossen testified that he reviewed plaintiff's records and concluded that there was no evidence of mental retardation. Tr. 753. Plaintiff performed at a "low-average" level in high school until her poor attendance and lack of motivation (underscored by her subsequent decision to drop out) lowered that level. Doctor Crossen also referred to evidentiary inconsistencies regarding plaintiff's cognitive limitations and grounds for questioning plaintiff's performance on related testing. The doctor noted that Dr. Greif questioned plaintiff's candor and the validity of plaintiff's testing, as reviewed above.

After considering the record and all of the testimony presented, the ALJ concluded that plaintiff's allegations of significant cognitive limitations were not supported by credible medical evidence. Tr. 29. The examination of school records, which Dr. Greif identified as critical for substantiating whether plaintiff's more recent psychological testing was accurate, revealed that plaintiff was not enrolled in any special education classes and performed at a "C" level at the beginning of high school. Such a record belies much of plaintiff's more recent self-reporting, such as plaintiff's representation that she could not recite the alphabet beyond the letter B during Dr. Greif's examination. Tr. 556.

Accordingly, this court concludes that the ALJ's conclusions regarding the degrees of plaintiff's cognitive limitations are based on proper legal standards and the related findings of

fact are supported by substantial evidence in the record as a whole. The ALJ provided a proper evaluation at steps two and three in determining plaintiff's severe limitations and finding that her impairments did not meet or medically equal the requirements of a listed impairment under SSA guidelines. *See* 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1098.

  2.  <u>Plaintiff's hip and back pain</u>

  Plaintiff next challenges the ALJ's finding at step two that plaintiff's alleged hip and back pain was not severe. This conclusion is also upheld.

  An impairment's limitation is significant when it affects a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Non-severe impairments are slight abnormalities (or a combination of slight abnormalities) that impact a claimant's ability to perform basic work activities only minimally. Social Security Ruling 96-3p.

  Plaintiff relies primarily upon treating records from 2002 that suggest "mild mid-dorsal fractures" and "mild degenerative disc disease" and treatments in 2002 and subsequently for back and hip pain. *See* Pl.'s Mem. at 19-20 (citations omitted). The ALJ properly noted the course and frequency of plaintiff's treatment for these complaints. Tr. 24. The amount of treatment can be "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Evidence that the claimant received conservative treatment may be "sufficient to discount a claimants' testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Here, the ALJ observed that plaintiff undertook limited treatment despite making emergency room visits for allegedly acute onsets of alleged hip and back pain. Tr. 24. Plaintiff's record reveals multiple instances in which plaintiff reported to an emergency room ostensibly for back or hip pain, but was suspected of drug seeking (because of the lack of objective medical findings or normal examination findings). Tr. 291-292, 376, 449.

  This court concludes that the ALJ's finding that there was no credible evidence showing that plaintiff had more than minimal hip pain or back pain was proper. Tr. 25. The ALJ's

conclusions regarding the evaluation of plaintiff's back and hip pain are based on proper legal standards and the related findings of fact are supported by substantial evidence in the record as a whole.

      3.     <u>Medical opinions</u>

Plaintiff's complaints about the ALJ's consideration of the assessments from Drs. Starbird, Greif and Crossen revisit much of the argument presented above regarding the evaluation of plaintiff's cognitive limitations. This court's conclusions that uphold the ALJ's evaluations of those assessments are reiterated.

Clear and convincing reasons are required to reject an examining physician's uncontradicted opinion. *See, e.g.,* 20 C.F.R. § 404.1527(d)(2). However, an ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject an examining physician's opinion that is contradicted by another physician. *Andrews*, 53 F.3d at 1041. Also, an ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Doctor Crossen 's opinion was well-supported by his discussion of the medical evidence of record, including Dr. Starbird's and Dr. Greif's opinions, and properly constituted substantial evidence that was consistent with, and supported by, other evidence of record. *See Tonapetyan*, 242 F.3d at 1149 (non-examining doctor's opinion constituted substantial evidence favoring rejection of treating doctor's opinion, when the former rested his opinion on the objective findings of an examining physician); *Andrews*, 53 F.3d at 1041 (if the opinion of a claimant's treating physician is contradicted, and the opinion of a non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence).

As reviewed above, the ALJ performed a thorough analysis of the medical evidence, and the resolution of conflicts among medical opinions was proper. Doctor Greif expressed explicit concerns about the weight that should be attributed to her assessments of plaintiff, and about

plaintiff's credibility. Tr. 556-57. The weight attributed to the evaluations of Drs. Greif and Starbird was proper in light of those evaluations' reliance upon plaintiff's self-reporting, and plaintiff's myriad credibility issues. *See Tonapetyan*, 242 F.3d at 1149.

   4.  Plaintiff's other arguments

  Plaintiff's remaining arguments are without merit and shall be addressed briefly. Plaintiff asserts that the ALJ assessed lay testimony improperly, assessed plaintiff's RFC improperly, and erred in constructing and posing a hypothetical question to the VE at step five.

  In determining a claimant's possible disability, an ALJ must consider lay witness testimony when it is presented. 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); *see also Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay testimony as to a claimant's symptoms or how an impairment affects a person is considered competent evidence and cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted).

  To discount the testimony of lay witnesses, an ALJ must give reasons that are germane to each witness. *Stout*, 454 F.3d at 1053; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so" (citations omitted)). When an ALJ errs by failing to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053.

  However, if lay testimony is controverted by the medical evidence presented, the ALJ does not err by ignoring the lay testimony. *Timmons v. Comm'r of Soc. Sec.*, 546 F. Supp. 2d 778, 795-96 (E. D. Cal. 2008) (citing *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). If the lay testimony is consistent with the medical evidence, then the ALJ must consider it and comment upon it. *Id.* (citing *Stout*, 454 F.3d at 1053).

11 - OPINION AND ORDER

Plaintiff's friend, Princess Walton, testified that plaintiff was severely limited. The ALJ's evaluation of this testimony concluded that Walton's testimony was incomplete and that its weight was affected by Walton's failure to acknowledge plaintiff's drug abuse. Tr. 29. In light of the fact that Walton was listed as a contact person regarding plaintiff's substance abuse, the ALJ's reasoning as to this testimony was germane. Assuming but not deciding that the evaluation of this lay testimony was inadequate, this court concludes that no reasonable ALJ could have reached a different disability determination even if Walton's testimony were fully credited.

This court has reviewed the ALJ's analysis of the relevant medical evidence and of plaintiff's RFC and concludes that the RFC analysis is supported by substantial evidence. The hypothetical questioning presented to the VE, and the ALJ's subsequent interpretation of the testimony elicited from the VE, was proper. In response to this proper questioning, the VE identified jobs that plaintiff could perform that exist in significant numbers in the national economy, including jobs as a garment sorter, hand bander, and label coder.

Plaintiff contends that these occupations are inapplicable because the ALJ "failed to pose a complete vocational hypothetical to the VE," omitting references to plaintiff's alleged functional illiteracy, mental retardation, and the mental limitations assessed by Drs. Starbird and Greif, limitations caused by plaintiff's severe hip and back impairments, and the allegations of the lay witness. Pl.'s Reply at 6.

The RFC finding and the hypothetical questioning posed to the VE appropriately included only limitations "based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (citation omitted). An ALJ is not bound to accept as true any restrictions presented in a hypothetical question propounded by a claimant's counsel, but may choose to accept these restrictions if they are supported by substantial evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

12 - OPINION AND ORDER

The hypothetical questioning submitted to the VE was consistent with, and supported by, the objective medical evidence presented. Because the ALJ's hypothetical questioning was based upon substantial evidence in the record, this court concludes that the ALJ's reliance upon the VE's testimony in finding that plaintiff could perform other work was proper. *See Copeland v. Bowen*, 861 F.2d 536, 540-541 (9th Cir. 1988).

This court also rejects plaintiff's argument that the occupations identified by the VE are inapplicable because they require a higher "educational development" than that encompassed by the ALJ's RFC of plaintiff. This court concludes that the tasks described for the challenged jobs are consistent with the RFC that the ALJ identified for plaintiff. Moreover, even if this argument were valid, only two of the three jobs identified by the VE qualify as having a higher educational development rating. The VE's identification of one example of work plaintiff could perform was sufficient to support the ALJ's conclusions.

Finally, this court concludes that the ALJ's conclusions – and the ALJ's reliance upon a VE under the facts presented in this case – complied with all applicable regulations and requirements. In cases such as this one in which a claimant's RFC may be viewed as falling between "light" and "sedentary" exertional levels, obtaining VE assistance is proper and advisable. Social Security Ruling 83-12. Consulting with a VE is "exactly what the caselaw and SSR 83-12" directs an ALJ to do when a claimant falls between two grids. *Moore v. Apfel*, 216 F.3d 864, 870 (9th Cir. 2000).

CONCLUSION

The findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Marita Gray's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this   7    day of January, 2009.

   /s/ ANCER L. HAGGERTY
ANCER L. HAGGERTY
United States District Judge

14 - OPINION AND ORDER